**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Thomas J. Tucker |

DETROIT POLICE LIEUTENANTS
AND SERGEANTS ASSOCIATION,

          Plaintiff,                    Adv. Case No._____

v.

CITY OF DETROIT, a Municipal
Corporation, MICHAEL DUGGAN,
Mayor, and MICHAEL HALL, Director
Human Resources

          Defendants.

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1452(a) and Federal Rule of Bankruptcy Procedure 9027, the

Defendants remove *Detroit Police Lieutenants and Sergeants Association v. City of Detroit,*

*Michael Duggan and Michael Hall*, Case Number 15-001851-CL ("State Court Case"), from the

Wayne County Circuit Court to the Bankruptcy Court. Pursuant to Federal Rule of Bankruptcy

Procedure 9027(a)(1), copies of all process and pleadings in the State Court Case are attached as

Exhibit 1 to this Notice. In the State Court Case, the Plaintiff seeks a preliminary injunction

restraining the Defendants and others from "terminating the medical coverage of spouses of

active DPLSA members who have retired from the City during the pendency of the unfair labor

practice proceeding before the Michigan Employment Relations Commission." Ex, 1, Complaint

at 8. The Plaintiff also seeks a temporary restraining order enjoining the Defendants and others

from "terminating the medical coverage of spouses who have retired from the City during the pendency of the unfair labor practice proceeding before the Michigan Employment Relations Commission." *Id.*

The State Court Case thus qualifies for removal under 28 U.S.C. § 1452 because it is a civil action that is neither a "proceeding before the United States Tax Court" nor "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power." Removal is timely under Federal Rule of Bankruptcy Procedure 9027(a)(3). The Bankruptcy Court has jurisdiction over the claims alleged in the State Court Case pursuant to 28 U.S.C. § 1334, Article VII of the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit ("Plan"), and the Order confirming the Plan. [Doc. Nos. 8045 & 8272]. The State Court Case is a core proceeding under 28 U.S.C. § 157(b)(2).

Dated:  March 5, 2015                       Respectfully submitted,

                                            By: /s/ Marc N. Swanson
                                            Jonathan S. Green (P33140)
                                            Marc N. Swanson (P71149)
                                            MILLER, CANFIELD, PADDOCK AND
                                            STONE, P.L.C.
                                            150 West Jefferson, Suite 2500
                                            Detroit, Michigan 48226
                                            Telephone: (313) 963-6420
                                            Facsimile: (313) 496-7500
                                            swanson@millercanfield.com
                                            green@millercanfield.com

                                            Charles N. Raimi (P29746)
                                            Deputy Corporation Counsel
                                            City of Detroit Law Department
                                            2 Woodward Avenue, Suite 500
                                            Coleman A. Young Municipal Center
                                            Detroit, Michigan  48226
                                            Telephone: (313) 237-5037
                                            Facsimile: (313) 224-5505
                                            raimic@detroitmi.gov

                                            ATTORNEYS FOR THE DEFENDANTS

2 Woodward Ave., Detroit MI 48226

Court Telephone No. 313-224-5207

THIS CASE IS ASSIGNED TO JUDGE    Sheila Ann Gibson    Bar Number: 37512

| Plaintiff<br>DETROIT POLICE lEUTENANTS AND SERGEANTS ASSOC | v | Defendant<br>CITY OF DETROIT |
| Plaintiff's Attorney<br><br>Peter P. Sudnick, P-30768<br>2555 Crooks Rd Ste 150<br>Troy, MI 48084-4742 | | Defendant's Attorney |

| CASE FILING FEE | JURY FEE |
| [X] Case Filing Fee - $150.00 | [ ] Jury Fee - $85.00 |

| ISSUED | THIS SUMMONS EXPIRES | DEPUTY COUNTY CLERK |
| 2/12/2015 | 5/14/2015 | File & Serve Tyler |

*This summons is invalid unless served on or before its expiration date.

CATHY M. GARRETT - WAYNE COUNTY CLERK

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1.   You are being sued.

2.   YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or take other lawful action (28 days if you were served by mail or you were served outside this state).

3.   If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

X    There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

___   A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

___   There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

___   An action within the jurisdiction of the family division of circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The docket number and assigned judge of the civil/domestic relations action are:

| Docket No. | Judge | Bar No. |
|---|---|---|
|  |  |  |

The action [ ] remains  [ ] is no longer  pending.



I declare that the complaint information above and attached is true to the best of my information, knowledge, and belief.

_____          _____
Date                             Signature of attorney/plaintiff

**COMPLAINT IS STATED ON ATTACHED PAGES. EXHIBITS ARE ATTACHED IF REQUIRED BY COURT RULE.**
If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01-3CC (09/2008) SUMMONS AND RETURN OF SERVICE

MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

STATE OF MICHIGAN
THIRD JUDICIAL CIRCUIT
WAYNE COUNTY

**RETURN OF SERVICE**

CASE NO.
15-001851-CL

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2)], and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization not required) |

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____

List all documents served with the Summons and Complaint

on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

I declare that the statements above are true to the best of me information, knowledge and belief.

| Service fee $ | Miles traveled $ | Mileage fee $ | Total fee $ | Signature |
|---|---|---|---|---|
| | | | | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____    Signature: _____
Date                                        Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____

Attachments

on _Monday March 2, 2015_
Day, date, time

_CN_ _____ on behalf of _City of Detroit_

Signature   _Charles A. Raimi_

MC 01-3CC (09/2008) SUMMONS AND RETURN OF SERVICE
MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

DETROIT POLICE LIEUTENANTS
AND SERGEANTS ASSOCIATION,

        Plaintiff,

        Case No.

    v.

        HON.

CITY OF DETROIT, A Municipal
Corporation, MICHAEL DUGGAN,
Mayor, and MICHAEL HALL,
Director Human Resources,

        Defendants.

_____/

PETER P. SUDNICK (P30768)
SudnickLaw, P.C.
Attorney for Plaintiff
2555 Crooks Road, Suite 150
Troy, Michigan 48084
(248) 643-8533

_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

        There is no other pending or resolved civil action arising out of
the transaction or occurrence alleged in the complaint.

    The Plaintiff, Detroit Police Lieutenants and Sergeants Association ("DPLSA"), by its

attorney, Peter P. Sudnick, for its Verified Complaint for Injunctive Relief, states as follows:

### INTRODUCTION

1.    The Defendant City executed a Collective Bargaining Agreement between the

City and DPLSA on November 6, 2014. The Collective Bargaining Agreement provides for

1

SUDNICKLAW, P.C., 2555 CROOKS ROAD, SUITE 150, TROY, MI 48084 (248) 643-8533

medical and hospitalization benefits for active DPLSA members that include coverage for the active member's spouse and children at the election of the active member. Without the consent or agreement of the Plaintiff DPLSA, the Defendant City on or about January 8, 2015 unilaterally and arbitrarily revoked the contractual right of an active member to elect two person or family coverage that included the spouse of the active member if the spouse was a retiree of the City. The City terminated the medical coverage for the retired spouse of an active member who elected spousal coverage effective February 1, 2015. On February 3, 2015, the Plaintiff DPLSA filed a Charge with the Michigan Employment Relations Commission claiming that the City's termination of a retiree spouse's coverage amounts to a repudiation of the DPLSA collective bargaining agreement in Violation of Sections 10(1)(a) and (e) of the Public Employment Relations Act, MCL 423.210(a) and (e). Because this action by the City is causing immediate and irreparable harm to the affected active DPLSA members, the Plaintiff is herein seeking injunctive relief in aid of the jurisdiction of the Michigan Employment Relations Commission in accordance with Section 16(h) of Act 336 of 1947, as amended, MCL 423.216(h).

<div align="center">PARTIES</div>

2. Plaintiff, Detroit Police Lieutenants and Sergeants Association ("DPLSA") is a labor organization as defined by MCL 423.2(g) and the exclusive bargaining representative as defined in MCL 423.201(a) for employees of the City of Detroit ("City") in the classifications of Detective, Police Investigator, Police Sergeant, Police Sergeant – Promotion List, Senior Communications Officer – Sergeant, Senior Radio Maintenance Officer – Police Sergeant, Police Sergeant – Chemist, Master Sergeant, Police Lieutenant, Supervisor of Radio Systems and Planning – Police Lieutenant, Supervisor of Operations – Police Lieutenant, Supervisor of

SUDNICKLAW, P.C., 2555 CROOKS ROAD, SUITE 150, TROY, MI 48084 (248) 643-8533

<div align="center">2</div>

Radio Maintenance – Police Lieutenant, and Supervisor of Firearms Identification and Explosives – Police Lieutenant.

3.    Defendant, City of Detroit ("City") is a municipal corporation and a political subdivision of the State of Michigan which operates pursuant to a "home rule" charter. Defendant City is an employer as defined in MCL 423.2(f) and a party to a collective bargaining agreement governed in part by the provisions of the Public Employment Relations Act, MCL 423.201 *et seq.*, specifically the provisions of MCL 423.210.

4.    Defendant Michael Duggan is the duly elected Mayor of the Defendant City.

5.    Defendant Michael Hall is the duly appointed Director of Human Resources and Labor Relations for the Defendant City.

## JURISDICTION AND VENUE

6.    The jurisdiction of this Court is invoked pursuant to Rule 3.310 of the Michigan Court Rules of 1985 and MCL 423.216(h) of the Public Employment Relations Act ("PERA") which states:

> Section 16.   Violations of the provisions of Section 10 shall be deemed to be unfair labor practices remediable by the commission in the following manner:
>
> \* \* \*
>
> (h) The commission or any charging party shall have power, upon issuance of a complaint as provided in subdivision (a) charging that any person has engaged in or is engaging in an unfair labor practice, to petition any circuit court within any circuit where the unfair labor practice in question is alleged to have occurred or where such person resides or exercises or may exercise its governmental authority, for appropriate temporary relief or restraining order, in accordance with the general court rules, and the court shall have jurisdiction to grant to the commission or any charging party such temporary relief or restraining order as it deems just and proper.

3

SUDNICKLAW, P.C.,  2555 CROOKS ROAD,  SUITE 150,  TROY, MI  48084   (248) 643-8533

7. The relief sought by the Plaintiff DPLSA is equitable in nature in that it seeks to prevent immediate and irreparable harm to its members during the pendency of the MERC unfair labor practice hearing in accordance with Section 16(h) of the PERA.

8. Venue is proper as Defendant City conducts its business and operates in Wayne County, State of Michigan, and all the actions complained of and resulting in the MERC unfair labor practice charge occurred in Wayne County, State of Michigan.

<u>FACTS</u>

9. Plaintiff DPLSA incorporates paragraphs 1 through 8 of this complaint as though fully alleged herein.

10. The City is an employer as defined under Section 2(f) of the Labor Mediation Act, MCL 423.1 *et seq.*, and as used in Section 10(1) of the Public Employment Relations Act, MCL 423.201 *et seq.*

11. On November 6, 2014, the City and DPLSA executed a Collective Bargaining Agreement ("Agreement" or "CBA") which was incorporated into the Chapter 9 City of Detroit Plan of Adjustment ("POA") in U.S. Bankruptcy Court Case No. 13-53846. The Agreement was duly authorized and approved by the State Treasurer and the City of Detroit Emergency Manager and continues in full force and effect through June 30, 2019 [Exhibit 1].

12. Under Article VII, paragraph B, of the Eighth Amended Plan of Adjustment of Debts of the City of Detroit, U.S. Bankruptcy Court, Eastern District of Michigan, Chapter 9 Case No. 13-53846, that addresses the Retention of Jurisdiction of the Bankruptcy Court, the enforcement, interpretation, and resolution of the terms of the contracts [collective bargaining agreements identified on Exhibit II. D. 5 of the Eighth Plan of Adjustment of Debts, including

SUDNICKLAW, P.C., 2555 CROOKS ROAD, SUITE 150, TROY, MI 48084 (248) 643-8533

4

the Agreement or CBA between the City and DPLSA] shall proceed under applicable state law (emphasis added) [Exhibit 2].

13. Article 43 of the Agreement or CBA between the City and DPLSA [Medical Insurance and Optical Care] states that covered active employees will be eligible to participate in the group medical, prescription drug, dental and vision plans ("Medical Plans") as described in the City's 2014 medical plan designs for the term of the Agreement or CBA [Exhibit 3].

14. In accordance with the terms of Article 43, paragraph B, of the Agreement or CBA [Exhibit 3], eligible active DPLSA members are entitled to select the coverage tier under the Medical Plan, i.e., single, two-person, or family coverage. The two-person and family coverage tiers include the spouse of the active member. During the applicable enrollment period, active employees electing to include their spouse listed the spouse when requesting either two-person or family coverage.

15. The plain terms of the executed Agreement or CBA covering active DPLSA members permits the eligible active member to select a coverage tier that includes the spouse of the active member without restriction. The participation of the spouse of the active member under either the two-person or family tier is an unrestricted contractual right that inures to the benefit of the active DPLSA member.

16. The medical benefits language of the DPLSA Agreement or CBA does not contain any language that denies or restricts an active DPLSA member from including his or her spouse under the two-person or family medical coverage tier. Neither Article 43 nor any other provision of the Agreement or CBA permits the City to terminate the coverage of a spouse of an active DPLSA member because the spouse is a retiree of the City.

5

SUDNICKLAW, P.C., 2555 CROOKS ROAD, SUITE 150, TROY, MI 48084 (248) 643-8533

17.    Notwithstanding the plain language of Article 43 of the Agreement or CBA, the City has unilaterally and arbitrarily, without the consent of the DPLSA, notified spouses of active DPLSA members who are retirees of the City that they are no longer eligible for medical coverage under the active medical plan(s) and that their medical coverage was terminated effective February 1, 2015 [Exhibit 4].

18.    The City only terminated the medical coverage of those spouses of active members who retired from the City and not those spouses who are not retirees of the City and work, or had worked, elsewhere or do not work at all.

19.    The City has refused to rescind the notices terminating the medical coverage for retired spouses of active DPLSA members.

20.    The City's action terminating the medical and hospitalization coverage of retired spouses of active DPLSA members amounts to a repudiation of the DPLSA Agreement or CBA as it pertains to medical coverage. This action by the City has resulted in the filing of an unfair labor practice charge by the DPLSA against the City alleging a violation of Sections 10(1)(a) and (e) of the Public Employment Relations Act, MCL 423.210(1)(a) and (e) [Exhibit 5].

21.    It is within the jurisdiction of the Circuit Court to exercise its equitable power to enjoin the City's action to ensure that the status quo is maintained until such time as the unfair labor practice is resolved by the Michigan Employment Relations Commission. See, Van Buren Public Schools v Wayne Circuit Judge, 61 Mich App 6 (1975).

22.    Plaintiff DPLSA anticipates that its unfair labor practice charge will not be scheduled for hearing at the MERC for at least several months at the earliest and that a decision will not issue until twelve (12) to twenty-four (24) months after the hearing.

6

SUDNICKLAW, P.C., 2555 CROOKS ROAD, SUITE 150, TROY, MI 48084    (248) 643-8533

Accordingly, the MERC cannot exercise any remedial authority until well after the City has unlawfully terminated spousal medical coverage and DPLSA member families have been irreparably impacted by the loss of spousal participation in the active member's contractual medical plan.

## IMMEDIATE AND IRREPARABLE HARM

23.    Plaintiff DPLSA incorporates paragraphs 1 through 22 of this complaint as though fully alleged herein.

24.    Section 16(h) of the Public Employment Relations Act, MCL 423.216(h) permits the charging party in an unfair labor practice case to petition the Circuit Court where the unfair labor practice has occurred, or where the person against whom the charge is brought exercises governmental authority, for appropriate temporary relief or restraining order, in accordance with the general court rules, and the Court shall have jurisdiction to grant the charging party such temporary relief or restraining order as it deems just and proper.

25.    It is just and proper to issue temporary injunctive relief or restraining order in this matter in aid of MERC's jurisdiction during the pendency of the unfair labor practice proceeding because the City's action terminating medical coverage of the retired spouses of active DPLSA members is causing immediate and irreparable harm in that:

a.    The termination of medical coverage was imposed without adequate time to search for and secure affordable coverage for spouses who in some cases need immediate medical attention;

b.    The ability to obtain alternative and adequate medical coverage for spouses is creating considerable financial and personal stress for the families of DPLSA members who are suddenly facing unanticipated financial expenses that strain family budgets after having already been forced to suffer pay cuts;

c.    The spouses of DPLSA members are facing the possibility of catastrophic financial losses unless alternative coverage is obtained

7

SUDNICKLAW, P.C., 2555 CROOKS ROAD, SUITE 150, TROY, MI 48084  (248) 643-8533

quickly even though the cost may be substantial. Certain spouses having existing medical conditions, such as heart conditions, could be confronted with life threatening and financially devastating circumstances with the loss of coverage, or they may have to accept inferior coverage or coverage that further erodes already fragile family budgets;

d.     The termination of spousal coverage is causing financial and emotional hardship where health care can now only be secured at considerable cost or, worse yet, the active member's spouse may be forced with having to forego medical care and treatment altogether. Because of the uncertainties inherent in the sudden loss of coverage, it is difficult to ascertain the extent and severity of the impact of the loss which will necessarily reveal itself over time.

[See Affidavits, attached hereto as Exhibit 6].

WHEREFORE, the Plaintiff, Detroit Police Lieutenants and Sergeants Association, respectfully requests that this Court:

a.     Order Defendant City to show cause why a preliminary injunction should not issue restraining Defendant City, its agents, employees, attorneys and any person in active concert or participation with it who are actually notified of the Court's order from terminating the medical coverage of spouses of active DPLSA members who have retired from the City during the pendency of the unfair labor practice proceeding before the Michigan Employment Relations Commission;

b.     Issue a temporary restraining order enjoining Defendant City, its agents, employees, attorneys and any person in active concert with it who are notified of the Court's order from terminating the medical coverage of spouses who have retired from the City during the pendency of the unfair labor practice proceeding before the Michigan Employment Relations Commission;

c.     Order Defendant City to pay to Plaintiff the costs of this action and reasonable attorney fees;

8

SUDNICKLAW, P.C., 2555 CROOKS ROAD, SUITE 150, TROY, MI 48084 (248) 643-8533

d.     Grant Plaintiff such other further relief as is just and equitable.

I have read the Verified Complaint for Injunctive Relief and affirm that the contents are true and accurate to my knowledge and belief.

<div style="text-align: right;">

DETROIT POLICE LIEUTENANTS AND
SERGEANTS ASSOCIATION

By: _____
       Mark Young, DPLSA President

</div>

STATE OF MICHIGAN)
                     )ss
COUNTY OF WAYNE )

On this \\\_\_\_day of February, 2015, before me personally appeared the above-named Mark Young, President of the Detroit Police Lieutenants and Sergeants Association, who being first duly sworn, deposes and says that he has read the foregoing Verified Complaint, by him subscribed, and knows the contents thereof, and that the same are true of his own knowledge, except for those matters which are therein contained stated to be upon his information and belief, and as to those matters, he believes them to be true.

Subscribed and sworn to before me this \\\_\_\_day of February, 2015.

<div style="text-align: right;">

_____
                       Notary Public
_____ County, Michigan
Acting in Wayne County, Michigan
My Commission Expires: _____

</div>

Respectfully submitted,

SudnickLaw, P.C.

By: _____
     Peter P. Sudnick (P30768)
     Attorney for Plaintiff DPLSA
     2555 Crooks Road, Suite 150
     Troy, Michigan 48084
     psudnick@sudnicklaw.com
     (248) 643-8533

<div style="border: 1px solid;">

ELAINE Y. KISNER
Notary Public, State of Michigan
County of Wayne
My Commission Expires Dec. 05, 2019
Acting in the County of _____

</div>

SUDNICKLAW, P.C., 2555 CROOKS ROAD, SUITE 150, TROY, MI 48084 (248) 643-8533

9

# EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

---------------------------------------------------- X

In re                                                  :     Chapter 9
                                                       :
CITY OF DETROIT, MICHIGAN,                             :     Case No. 13-53846
                                                       :
          Debtor.                                      :     Hon. Steven W. Rhodes
                                                       :
                                                       :
---------------------------------------------------- X

---

## EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT
### (October 22, 2014)

---

DAVID G. HEIMAN
HEATHER LENNOX
THOMAS A. WILSON
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com
tawilson@jonesday.com

BRUCE BENNETT
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
bbennett@jonesday.com

JONATHAN S. GREEN
STEPHEN S. LAPLANTE
MILLER, CANFIELD,
    PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

### ATTORNEYS FOR THE DEBTOR

# EXHIBIT 2

entitled to under the Plan on account of such Allowed Claim had such Claim been Allowed as of the Effective Date. If a Disputed Claim is disallowed by Final Order, the property reserved on account shall become available for Distribution to the Holders of Allowed Claims within the Class(es) entitled to receive such property. Each Holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse only to the assets held in the disputed claims reserve and not to any other assets held by the City, its property or any property previously distributed on account of any Allowed Claim.

C.    Objections to Claims.

 1.    Authority to Prosecute, Settle and Compromise.

  The City's rights to object to, oppose and defend against all Claims on any basis are fully preserved. As of the Effective Date, only the City shall have the authority to File, settle, compromise, withdraw or litigate to judgment objections to Claims, including pursuant to the ADR Procedures or any similar procedures approved by the Bankruptcy Court. Any objections to Claims shall be Filed no later than the Claims Objection Bar Date. On and after the Effective Date, the City may settle or compromise any Disputed Claim or any objection or controversy relating to any Claim without any further notice or any action, order or approval of the Bankruptcy Court.

 2.    Expungement or Adjustment of Claims Without Objection.

  Any Claim that has been paid, satisfied or superseded shall be expunged from the Claims Register by the Claims and Balloting Agent at the request of the City, and any Claim that has been amended by the Holder of such Claim shall be adjusted on the Claims Register by the Claims and Balloting Agent at the request of the City, without the Filing of an objection and without any further notice or any action, order or approval of the Bankruptcy Court.

 3.    Extension of Claims Objection Bar Date.

  Upon motion by the City to the Bankruptcy Court, the City may request, and the Bankruptcy Court may grant, an extension to the Claims Objection Bar Date generally or with respect to specific Claims. Any extension granted by the Bankruptcy Court shall not be considered to be a modification to the Plan under section 1127 of the Bankruptcy Code.

 4.    Authority to Amend List of Creditors.

  The City will have the authority to amend the List of Creditors with respect to any Claim and to make Distributions based on such amended List of Creditors without approval of the Bankruptcy Court. If any such amendment to the List of Creditors reduces the amount of a Claim or changes the nature or priority of a Claim, the City will provide the Holder of such Claim with notice of such amendment and such Holder will have 20 days to File an objection to such amendment with the Bankruptcy Court. If no such objection is Filed, the Disbursing Agent may proceed with Distributions based on such amended List of Creditors without approval of the Bankruptcy Court.

ARTICLE VII
RETENTION OF JURISDICTION

  Pursuant to sections 105(c), 945 and 1142(b) of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 9 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

 A.    Allow, disallow, estimate, determine, liquidate, reduce, classify, re-classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the amount, allowance, priority or classification of Claims;

-69-

B. Confirm the maturity date and the terms as written of the collective bargaining agreements identified on Exhibit II.D.5 of the Plan, which agreements are incorporated as part of the Plan (it being understood that the enforcement, interpretation and resolution of disputes of the terms of the contracts shall proceed under applicable state law);

C. Resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including claims for payment of any cure amount;

D. Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

E. Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the City that may be pending on the Effective Date or brought thereafter;

F. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

G. Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

H. Approve any modification of the Plan or approve any modification of the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any order, the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or enter any order in aid of confirmation pursuant to sections 945 and 1142(b) of the Bankruptcy Code, in such manner as may be necessary or appropriate to consummate the Plan;

I. Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

J. Adjudicate, decide or resolve any matters relating to the City's compliance with the Plan and the Confirmation Order consistent with section 945 of the Bankruptcy Code;

K. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or Distributions pursuant to the Plan are enjoined or stayed;

L. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

M. Resolve any matters, cases, controversies, suits or disputes that may arise in connection with the FGIC Development Agreement;

N. Resolve any matters, cases, controversies, suits or disputes that may arise in connection with the Syncora Development Agreement

O. Enforce or clarify any orders previously entered by the Bankruptcy Court in the Chapter 9 Case;

-70-

# EXHIBIT 3

## 41. UNIFORMS

A. Employees shall continue to be provided with uniforms and accessories in accordance with present practice.

B. Employees shall receive an annual uniform cleaning allowance of two hundred and fifty dollars ($250) per year payable the first payroll period each fiscal year.

C. The Department will no longer issue replacement uniforms and accessories. Employees will instead receive a uniform allowance of eight hundred and fifty dollars ($850) annually for the procurement and maintenance of all of the member's required uniforms and accessories. The Employee shall be responsible for procuring uniforms and equipment according to Department specifications. This allowance shall not include maintenance and procurement of bulletproof vests or other specialty equipment, which the Department shall continue to procure and issue directly to the Employees. Employees shall continue to receive the annual two hundred and fifty dollar ($250) cleaning allowance. These allowances shall continue to be payable the first payroll period each fiscal year.

## 42. COPIES OF AGREEMENT

The City agrees to furnish the Association with an electronic copy of this Agreement and 100 paper copies of this Agreement.

## 43. HOSPITALIZATION, MEDICAL INSURANCE AND OPTICAL CARE

A. During the term of this Agreement, Employees will be eligible to participate in the group medical, prescription drug, dental, and vision plans ("Medical Plans") offered by the City. Unless the parties mutually agree otherwise, the City's 2014 medical plan designs ("Medical Plan Designs") will remain in place during the term of this Agreement. For purposes of this Section, the term Medical Plan Design will collectively refer to deductibles, co-payments, covered services, networks, and third party administrators or insurers.

  1. Notwithstanding this section A, the City will promptly analyze providing ScriptGuideRx, Inc. as a pharmacy benefits manager ("PBM") for the self-insured PPO option provided to police and firefighter active employees who enroll for health insurance. The City agrees to include ScriptGuide as a PBM for its self-insured option for active police and firefighter enrollees if (i) the City concludes - in its sole discretion - that ScriptGuide can be provided on a cost neutral or lower cost basis for the City relative to the continued use of Caremark during its first contract year of use and the Contract term, and (ii) following an analysis by the City respecting ScriptGuide's applicable managed formulary, generic utilization, network and co-payment structure, and sharing of that analysis and discussion with the Association, the DPLSA approves the City's use of ScriptGuide as the PBM for its self-insured option for DPLSA, even if the co-pay structure for generic, brand or specialty prescription drugs necessary for cost

neutrality requires higher active employee co-pays for certain forms of prescription drugs. Notwithstanding the above, the City agrees prior to any final determination, that it will meet and confer with the DPLSA to discuss its findings. The City shall determine whether ScriptGuide will be cost neutral or lower prescription drug costs based on the cost for the entire active population. If ScriptGuide is substituted for Caremark, any savings resulting therefore will be determined and distributed in accordance with Section J(1)(b) of this Article.

B.  Employees will be required to make monthly contributions for their benefits based upon the plan and coverage tier selected by the Employee. Monthly contributions will be deducted from Employee payroll disbursements on a pre-tax basis (if authorized by the employee), in accordance with applicable law.

   1.  For calendar year 2014, Employees' monthly contributions under the City's Medical Plans will remain at the levels in place as of the Effective Date of this Agreement.

   2.  For subsequent calendar years during the term of this Agreement, Employees' monthly contributions under the City's Medical Plans will be adjusted annually to the level necessary to maintain an 80/20 proportional share of the cost of the medical coverage, subject to the terms and conditions and limitations set forth in this Article. Under this cost sharing arrangement, the City will pay eighty percent (80%) of the costs of each coverage tier in the City's Medical Plans, and Employees participating in each coverage tier will pay twenty percent (20%) of the costs for such coverage tier. Premiums will be calculated as follows:

      a.  For the Health Alliance Plan ("HAP") health maintenance organization ("HMO") plan, a participating Employee will pay 20% of the premium charged by HAP for his/her coverage tier. Such premiums will be established by HAP, subject to confirmation by an independent enrolled actuary retained by the City ("Enrolled Actuary").

      b.  For the Blue Cross/Blue Shield ("BCBS") preferred provider organization ("PPO") plan, monthly contributions will be set such that Employees in each coverage tier collectively pay twenty (20%) of the costs for that coverage tier. Such monthly contributions will be calculated by the Enrolled Actuary. Monthly contributions will be calculated in accordance with generally accepted actuarial principles, and will take into account claims experience from the prior fiscal year, inflation, actual and anticipated administrative costs, actual and anticipated fees and surcharges (including those associated with compliance with the Patient Protection and Affordable Care Act ("ACA")), and any other relevant costs or factors as determined by the Enrolled Actuary.

C.  C.O.P.S. Health Trust: For calendar year 2015 and for subsequent calendar years during the term of this Agreement, Employees may elect to participate in medical benefit plans

offered by C.O.P.S. Health Trust ("COPS Trust") in lieu of the City's Medical Plans subject to the following conditions:

1. An Employee who participates in COPS Trust may not concurrently participate in any City Medical Plan.

2. For each Employee who elects to be covered by COPS Trust, the City will make a monthly contribution to COPS Trust that is equal to the lesser of (a) the City's *pro rata* contribution under the HAP Plan in the corresponding coverage tier (*e.g.* single, two person, family) or (b) the City's *pro rata* contribution under the BCBS Plan for the corresponding coverage tier. Under no circumstances will the City's monthly contribution to COPS Trust exceed the City's monthly contribution for coverage under the lowest cost City plan for the applicable coverage tier.

3. The City will have no obligations in connection with COPS Trust other than to make the payments described in this Section C. Specifically, the City will not have any administrative involvement whatsoever in connection with employee participation in COPS Trust, and any employee participating in COPS Trust will be responsible for paying any additional monthly premium payments beyond the City's monthly contribution pursuant to Section C.2 of this Article directly to COPS Trust. Under no circumstances will the City be deemed to be an administrator or fiduciary with respect to any medical plans provided by COPS Trust.

4. The Union agrees to indemnify the City, and hold the City harmless, against any and all claims asserted by employees or third parties against the City or any of its elected or appointed officials, employees, agents, attorneys, or consultants that are in any way related to or connected with employee participation in COPS Trust, including but not limited to any claims any medical plans offered by COPS Trust, including but not limited to any claims for benefits provided to, or denied, City employees by COPS Trust, as well as any and all claims that are in any way related to any acts or omissions by COPS Trust, or its officers, directors, trustees, employees, or agents.

D. VSP: For calendar year 2015 and for subsequent calendar years during the term of this Agreement, Employees may elect to participate in vision benefit plans offered by VSP in lieu of the City's vision plan subject to the following conditions:

1. An Employee who participates in VSP may not concurrently participate in any City vision plan.

2. For each Employee who elects to be covered by VSP, the City will make a monthly contribution to VSP that is equal to the the City's *pro rata* contribution under the Heritage vision plan in the corresponding coverage tier (*a.g.* single, two person, family). Under no circumstances will the City's monthly contribution to VSP exceed the City's monthly contribution for coverage under the lowest cost City plan for the applicable coverage tier.

3. The City will have no obligations in connection with VSP other than to make the payments described in this Section C. Specifically, the City will not have any administrative involvement whatsoever in connection with employee participation in VSP, and any employee participating in VSP will be responsible for paying any additional monthly premium payments beyond the City's monthly contribution pursuant to Section C.2 of this Article directly to VSP. Under no circumstances will the City be deemed to be an administrator or fiduciary with respect to any medical plans provided by VSP.

4. The Union agrees to indemnify the City, and hold the City harmless, against any and all claims asserted by employees or third parties against the City or any of its elected or appointed officials, employees, agents, attorneys, or consultants that are in any way related to or connected with employee participation in VSP, any vision plans offered by VSP, including but not limited to any claims for benefits provided to, or denied, City employees by VSP, as well as any and all claims that are in any way related to any acts or omissions by VSP, or its officers, directors, trustees, employees, or agents

E. Except as provided in this Article, the extent of coverage under the City's Medical Plans will be governed by the terms and conditions set forth in the applicable Medical Plans offered by the City during the term of this Agreement. Plan documents may be modified or amended by the City from time to time in accordance with the terms of the applicable plan documents, provided that such amendments do not violate the terms of this Article. Any questions or disputes concerning any City Medical Plans will be resolved in accordance with the terms and conditions set forth in the applicable insurance policies or plan documents and will not be subject to the Grievance & Arbitration Procedures set . forth in Articles 8 and 9 of this Agreement.

F. The failure of any insurance carrier(s), PBM, or plan administrator(s) to provide any benefit for which it has contracted or is obligated will not result in any liability to the City, nor will such failure be considered a breach by the City of any obligation undertaken under this or any other Agreement. However, nothing in this Agreement will be construed to relieve any insurance carrier(s) or plan administrator(s) from any liability it may have to bargaining unit Employees or beneficiaries of bargaining unit Employees.

G. Except as set forth in this Article, during the term of this Agreement, the City Medical Plans will provide benefits with an actuarial value as determined by the Enrolled Actuary that are at the "Gold" level (i.e., approximate actuarial value of 80%), as defined by the ACA. In the event that the actuarial value of a City Medical Plan's benefits falls below the "Gold" level as determined by the Enrolled Actuary during the term of the Agreement, the City will meet and confer with the Union to discuss potential modifications to the Medical Plan during the subsequent plan year to raise the actuarial value of the benefits to the "Gold" level.

H. Notwithstanding any provision in this Article that could be construed to the contrary, this Article will not be construed to require the City to fall out of compliance with the requirements Public Act 152 of 2011 ("PA 152"), MCL § 15.561 *et. seq.* The City's

Enrolled Actuary will be responsible for periodically monitoring compliance with the requirements of PA 152. In any event where the Enrolled Actuary determines that the City is reasonably likely to fall out of compliance with PA 152, the City will meet and confer with the Union for a period not longer than thirty (30) days in order to discuss potential modifications to the terms of the Medical Plans or to the allocation of premium payments by the City and the Employees. To the extent the City and the Union are unable to reach an agreement within thirty (30) days, the City may make any necessary modifications to ensure compliance with PA 152.

- I. Surviving Spouses/Dependents. Current and future spouses and dependents of bargaining unit employees who are killed in the line of duty will be eligible to continue to participate in the City's Hospitalization, Medical Insurance, Optical and Dental care plans on the same terms and conditions as active bargaining unit members.

J. Retiree Medical Benefits.

1. Retiree Medical Subsidy. The City will contribute the following amounts towards the cost of retiree health benefits for Eligible Retirees (the "Retiree Medical Subsidy"):

   a. On or before January 31, 2015 (and each subsequent January 31 during the term of this Agreement), the City will contribute a total sum of one million dollars and no cents ($1,000,000.00) to the COPS Trust VEBA to fund retiree medical benefits for City of Detroit employees (and Eligible Retirees) in the bargaining units represented by the DPLSA, the Detroit Fire Fighters Association (DFFA), the Detroit Police Command Officers Association (DPCOA), and the Detroit Police Officers Association (DPOA) (collectively, the "Public Safety Unions"). The amount contributed on behalf of the DPLSA will be determined by: (a) dividing the total DPLSA bargaining unit headcount as of July 1, 2014, by (b) the total active employee headcount in the four Public Safety Unions as of July 1, 2014, and then (c) multiplying the quotient by $1,000,000.00 (DPLSA headcount ÷ total Public Safety Union headcount) × $1,000,000.00).

   b. In addition, if, pursuant to the May 5, 2014 Term Sheet, ScriptGuide is substituted for Caremark for DPLSA employees in connection with the self-insured PPO option, no later than 90 days after the close of a calendar year, the City shall direct an independent third party prescription drug audit specialist of the City's choosing-- which may include Remedy Analytics or Trivantage Pharmacy Strategies LLC -- to conduct a PBM pricing audit. The audit specialist shall obtain individual prescription drug claim data and pricing data from ScriptGuide, and a reasonable sampling of similar data from the City employee population that is covered by Caremark, and shall examine the contract provisions and actual pricing application and compare such data. Based on such information and other relevant information as the audit specialist determines, the audit specialist

shall then determine in its sole discretion the extent of the cost savings to the City from using ScriptGuide in comparison to Caremark. The third party audit specialist's determination shall be binding and the union shall not be able to grieve, arbitrate, mediate or otherwise litigate that determination. Any cost savings determined by the third party specialist shall be split 50-50 between the City and the covered employees in the following manner; An amount equal to 50% of the cost savings shall be applied in the year following the determination to retiree health benefits for DPLSA active members.

c.  Any foundation money available to fund medical benefits for Public Safety Union retirees shall also be contributed to the COPS Trust VEBA.

2.  No Additional Liability. Other than the Retiree Medical Subsidy, the City shall not be required to pay any additional amounts including, but not limited to start-up costs, to the COPS Trust VEBA, or to pay any other sums (including but not limited to administration expenses), in connection with retiree health coverage for Eligible Retirees during the term of the Agreement. Moreover, the parties agree that COPS Trust shall have sole responsibility for maintaining and investing all funds contributed by the City pursuant to this Article 43, Section J, and shall be solely responsible for determining the benefit design and form, amount, and timing of all benefit payments to Eligible Retirees pursuant to this Agreement, and COPS Trust shall have sole responsibility to ensure that all of COPS Trust's acts or omissions with respect to the provision of benefits to Eligible Retirees comply with applicable law. As such, other than its obligation to timely pay the Retiree Medical Subsidy, the City shall have no responsibility and shall face no liability to any party with respect to the provision of benefits to Eligible Retirees pursuant to Article 43, Section J.

3.  Indemnification. The Union agrees to indemnify the City, and hold the City harmless, against any and all claims asserted by employees or third parties against the City or any of its elected or appointed officials, employees, agents, attorneys, or consultants that are in any way related to or connected with employee or Eligible Retiree participation in the COPS Trust VEBA, including but not limited to any claims for benefits provided to, or denied, City employees or Eligible Retirees (or their spouses or dependents) by the COPS Trust VEBA, as well as any and all claims by other persons that are in any way related to any acts or omissions by the COPS Trust VEBA, or its officers, directors, trustees, employees, or agents.

4.  Eligibility. Employees who retire on or before December 31, 2014 shall participate in the OPEB settlement available to existing retirees in accordance with the Plan of Adjustment in In re City of Detroit, Case No. 13-53846. Employees who retire and receive pension benefits from the PFRS on or after January 1, 2015 ("Eligible Retirees") shall be eligible for retiree health care benefits from the COPS Trust VEBA as determined by such VEBA and as set forth herein.

# EXHIBIT 4

**City of Detroit**
**Benefits Administration Office**
**2 Woodward Room 304, Detroit, MI 48206**

# CONFIRMATION NOTICE OF HEALTH/DENTAL/VISION CARE COVERAGE CHANGE

January 8, 2015

Dan Headapohl
52507 Robins Nest
Chesterfield, MI 48047

Dear Dan Headapohl,

This notice is to inform you that the City of Detroit's Benefits Administration Office has conducted an audit and our records indicate that you are a retiree of the City of Detroit and that you are enrolled in an active City of Detroit employee medical plan. As a retiree of the City of Detroit, you are not eligible to be enrolled on the City's active medical plan. The Benefits Administration Office's records indicate that you are however eligible for the Non Medicare Eligible Stipend offered to the City retirees. Therefore, your medical coverage on the City of Detroit's active medical plan will terminate effective 2/1/2015 and will be replaced by the aforementioned stipend you are eligible for. Please keep this notice for your records.

**Reason for the change:**
- ☐ Retiree's request.
- x Audit
- ☐ Failure to provide appropriate documentation.
- ☐ Not Eligible for active City of Detroit medical coverage
- ☐ Enrollment into Medicare Parts A & B effective
- ☐ Disenrollment from Medicare Parts A and B.
- ☐ Wayne County Rescission of Health Care Coverage for dependent.
- ☐ Other:

Your medical coverage and retiree contribution amount will be as follows effective February 2015:

<u>Plan Description & Coverage Type:</u>    Non Medicare Eligible Stipend

You may contact Benefits Express at (855) 224-6200 with any questions or concerns.

Sincerely,

Benefits Administration Office

cc:    file

# EXHIBIT 5



# CHARGE

Michigan Department of Licensing and Regulatory Affairs
Employment Relations Commission (MERC)
Labor Relations Division
313-456-3510

Authority: P.A. 380 of 1965, as amended.

---

INSTRUCTIONS: File an original and 4 copies of this charge (including attachments) with the Employment Relations Commission at: Cadillac Place, 3026 W. Grand Boulevard, Suite 2-750, PO Box 02988, Detroit MI 48202-2988 or 611 W. Ottawa St, 2nd Floor, PO Box 30016, Lansing, MI 48909. The Charging Party must serve the Charge on the opposing side within the applicable statute of limitations, and must file a statement of service with MERC.
*(Refer to the "How to File a Charge" document under the "Forms" link at www.michigan.gov/merc.)*

Complete Section 1 if you are filing charges against an employer and/or its agents and representatives. ---or---
Complete Section 2 if you are filing charges against a labor organization and/or its agents and representatives.

| 1. EMPLOYER AGAINST WHICH THE CHARGE IS BROUGHT | Check appropriate box: ☐ Private ☑ Governmental |
|---|---|

Name and Address:

City of Detroit
Attn: Michael Hall, Director Human Resources and Labor Relations
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 316
Detroit, Michigan 48226

2015 FEB 13 AM 11: 54 RECEIVED

---

**2. LABOR ORGANIZATION AGAINST WHICH THE CHARGE IS BROUGHT**

Name and Address:

---

**3. CHARGE**

Pursuant to the ~~Labor Mediation Act (LMA)~~ or Public Employment Relations Act (PERA) *(cross out one)*, the undersigned charges that the above-named party has engaged in or is engaging in unfair labor practices within the meaning of the Act.

On an attached sheet you must provide a clear and concise statement of the facts which allege a violation of the LMA or PERA, including the date of occurrence of each particular act and the names of the agents of the charged party who engaged in the complained of conduct. The charge should describe who did what and when they did it, and briefly explain why such actions constitute a violation of the LMA or PERA.

The Commission may reject a charge for failure to include the required information. However, it is not necessary to present your case in full at this time. Documentary material and exhibits ordinarily should not be submitted with this charge form.

---

| 4. Name and Address of Party Filing Charge (Charging Party)<br>(If labor organization, give full name, including local name and number)<br>Detroit Police Lieutenants and Sergeants Association | Telephone Number:<br>( 313 ) 961-6990 |
|---|---|

5. List ALL related MERC case(s) (if any):  None

(Name of parties)

Case No.: _____ Judge: _____

Case No.: _____ Judge: _____

| I have read this charge and it is true to the best of my knowledge and belief.<br><br>_____<br>Signature of Representative/Person Filing Charge | Email:<br>psudnick@sudnicklaw.com<br>Telephone/Cell No.:<br>(248) 643-8633 |
|---|---|
| Print Name and Title:<br>Peter P. Sudnick, Attorney for DPLSA | Fax No.:<br>(248) 643-0417 |
| Street Address:<br>2655 Crooks Road, Suite 150 | City: Troy | State: MI | Zip Code: 48084 |

The Department of Licensing and Regulatory Affairs will not discriminate against any individual or group because of race, sex, religion, age, national origin, color, marital status, disability, or political beliefs. If you need assistance with reading, writing, hearing, etc., under the Americans with Disabilities Act, you may make your needs known to this agency.

BER _____ (5/27)

## CHARGE

The Charging Party, Detroit Police Lieutenants and Sergeants Association ("DPLSA"), alleges a violation of Sections 10(1)(e) and (a) of the Public Employment Relations Act, MCL 423.201 et seq., stating as follows:

1. The DPLSA is the exclusive bargaining representative for employees of the City of Detroit ("City") in the classifications of Detective, Police Investigator, Police Sergeant, Police Sergeant-Promotion List, Senior Communications Officer-Police Sergeant, Senior Radio Maintenance Officer-Police Sergeant, Police Sergeant-Chemist, Master Sergeant, Police Lieutenant, Supervisor of Radio Systems and Planning-Police Lieutenant, Supervisor of Operations-Police Lieutenant, Supervisor of Radio Maintenance-Police Lieutenant, and Supervisor of Firearms Identification and Explosives-Police Lieutenant.

2. The City is an employer as defined under Section 2(f) of the Labor Mediation Act, MCL 423.1 et seq., and as used in Section 10(1) of the Public Employment Relations Act, MCL 423.201 et seq.

3. On November 6, 2014, the City and DPLSA executed a collective bargaining agreement ("Agreement") which was incorporated into the Chapter 9 City of Detroit Plan of Adjustment in U.S. Bankruptcy Court Case No. 13-53846. The Agreement was duly authorized and approved by the State Treasurer and City of Detroit Emergency Manager and continues in full force and effect through June 30, 2019 [Exhibit 1].

4. Under Article VII, paragraph B, of the Eighth Amended Plan of Adjustment of Debts of the City of Detroit ("Plan"), U.S. Bankruptcy Court, Eastern District of Michigan, Chapter 9 Case No. 13-53846, that addresses the Retention of Jurisdiction of the Bankruptcy Court, the enforcement, interpretation, and resolution of disputes of the terms of the contracts [collective bargaining agreements identified on Exhibit II. D. 5 of the Plan, including the Agreement between the City and DPLSA] shall proceed under applicable state law [Exhibit 2].

5. Article 43 of the Agreement between the City and DPLSA [Medical Insurance, and Optical Care] states that covered active employees will be eligible to participate in the group medical, prescription drug, dental and vision plans ("Medical Plans") as described in the City's 2014 medical plan designs for the term of the Agreement.

6. In accordance with the terms of Article 43, paragraph B of the Agreement, eligible active employees are entitled to select the coverage tier under the Medical Plans, i.e., single, two-person or family coverage. The two-person and family coverage tiers include the spouse of the active employee. During the applicable enrollment period, active employees list the persons included in the two-person and family coverage tiers, including the spouse of the active employee.

7. The plain terms of the executed Agreement covering active DPLSA members permits the eligible active member to select a coverage tier that includes the spouse of the active member without restriction. The participation of the spouse of the active DPLSA member under either the

two-person or family tier coverage is an unrestricted contractual right that inures to the benefit of the active DPLSA member.

8. The medical benefits language of the DPLSA Agreement does not contain any language that denies or restricts an active DPLSA member from including his or her spouse under the two-person or family medical coverage. Neither Article 43 nor any other provision of the Agreement permits the City to deny coverage under the active medical plan to a spouse of an active DPLSA member because the spouse is a retiree of the City.

9. Notwithstanding the plain language of Article 43 of the Agreement, the City has unilaterally and arbitrarily, without the consent or agreement of the DPLSA, notified spouses of active DPLSA members who are retirees of the City that they will no longer be eligible for medical coverage under the active member plan and that their medical coverage will terminate effective February 1, 2015 [Exhibit 4].

10. The City has refused to rescind the notices terminating the medical coverage of retired spouses of active DPLSA members.

11. The action of the City terminating the medical coverage of retired spouses of active DPLSA members amounts to a repudiation of the DPLSA Agreement as it pertains to active medical coverage and constitutes a violation o f Sections 10(1)(a) and (e) of the Public Employment Relations Act, MCL 423.210(1)(a) and (e).

12. The action of the City terminating the medical coverage of retired spouses of active DPLSA members is causing immediate and irreparable harm in that spouses wrongfully denied participation in active medical coverage are without the means to obtain replacement coverage in order to secure necessary medical care and treatment. In some cases, health care and medical treatment can only be obtained at considerable cost creating undue financial and medical hardship on the families of active DPLSA members.

WHEREFORE, the Charging Party, Detroit Police Lieutenants and Sergeants Association, respectfully requests that the Commission:

(1)     Compel the Respondent City to answer the Charge;

(2)     Schedule an immediate hearing in this matter;

(3)     Petition the Circuit Court for the 3rd Judicial Circuit, Wayne County, Michigan, for a preliminary injunction or temporary restraining order in aid of the Commission's jurisdiction enjoining the City from terminating the medical coverage of retired spouses of active DPLSA members until the Commission can conduct a hearing on the charge and issue a final order in this case;

(4)     Sustain the Charge in its entirety;

(5)  Fashion an appropriate remedial order to include directing the City to cease and desist from refusing to allow retired spouses of active DPLSA members to participate in the active medical plan; notice posting; a make-whole provision; an award of litigation expenses; and such other relief as it finds just and proper in this case.

# EXHIBIT 6

STATE OF MICHIGAN)
              )ss
COUNTY OF WAYNE )

      On this 12th day of February, 2015, Shannon Dekin *Dekun* appeared before this undersigned notary public and, being first duly sworn, did depose and say as follows:

      1.     I am currently employed by the City of Detroit Police Department in the rank of sergeant. I have over 19 years of service and I am assigned to the detective unit at the 9th Precinct.

      2.     Approximately 10 years ago, I elected family medical coverage. This coverage included my spouse who is currently a retiree of the City of Detroit who worked as a police officer in narcotics for approximately 15 years before he was forced to retire because of a heart condition.

      3.     In 2008, my spouse, Michael Dekin *Dekun*, suffered a major heart attack causing him to retire in 2009. Because of his heart condition, he is constantly monitored and required to take heart medications. The medical costs and expenses associated with his heart attack in 2008 were in the high six figures and would have exhausted all of our family assets without the benefit of family medical coverage provided under the DPLSA collective bargaining agreement.

      4.     Following the retirement of my spouse in 2009, I continued to elect family coverage which included my spouse. This coverage continued under the terms of the 2014-2019 DPLSA collective bargaining agreement as I understand them.

SUDNICKLAW, P.C., 2555 CROOKS ROAD, SUITE 150, TROY, MI 48084 (248) 643-8533

5. Up through the current date I have been contributing to family medical coverage through payroll deduction.

6. I received no prior notice or indication before the second week of January, 2015, that the City had decided to terminate my spouse's participation in the family medical coverage effective February 1, 2015. I was devastated by the notification and fearful of the emotional and financial consequences of a medical emergency.

7. In order to address the lack of spousal medical coverage to which my spouse was entitled by the terms of the DPLSA collective bargaining agreement, I applied for a hardship to obtain monies from my deferred compensation plan.

8. I intend to use the deferred compensation monies which were intended for my eventual retirement to obtain medical coverage for my spouse.

9. The sudden termination of spousal coverage apparently only applies to spouses who retired from the City of Detroit and not to other spouses of DPLSA members who did not retire from the City. To single out spouses who retired from the City and provided service to the City at great personal risk, is grossly unfair and contrary to the medical benefit I have a right to elect under the terms of the collective bargaining agreement.

10. I now have to secure alternative coverage for my spouse before any possible medical emergency at significant, unexpected cost. This has caused considerable stress and hardship for my family. It causes coverage concerns and denies me the security of family coverage that I understood was a benefit to which I was entitled as part of my employment with the City.

2

SUDNICKLAW, P.C., 2555 CROOKS ROAD, SUITE 150, TROY, MI 48084 (248) 643-8533

I declare that to the best of my knowledge and belief the information contained herein is true and correct.

_____

Shannon Dekin
Dekun

Subscribed and sworn before me
this \\_\_day of February, 2015.

_____
Notary Public
Wayne County, Michigan
Acting in Wayne County, Michigan
My commission expires: \2\5\20\9

ELAINE Y. KISNER
Notary Public, State of Michigan
County of Wayne
My Commission Expires Dec. 06, 2019
Acting in the County of Wayne

SUDNICKLAW, P.C., 2555 CROOKS ROAD, SUITE 150, TROY, MI 48084 (248) 643-8533

3

# AFFIDAVIT
## SGT. NANCY HEADAPOHL

STATE OF MICHIGAN)
              )ss
COUNTY OF WAYNE )

On this 12th day of February, 2015, Nancy Headapohl appeared before this undersigned notary public and, being first duly sworn, did depose and say as follows:

1.    I am currently employed by the City of Detroit Police Department in the rank of sergeant and I am assigned to midnight patrol, 3rd Precinct.

2.    My spouse, Dan Headapohl, worked for the City of Detroit Police Department approximately 35 years before his retirement in 2006.

3.    Effective 2014 I elected two-person medical coverage that included my spouse in accordance with the election allowed by the terms of the DPLSA collective bargaining agreement.

4.    Throughout 2014 and continuing in 2015, I contributed $68.61 every two (2) weeks for two-person coverage.

5.    In January 2015, my spouse received notification from the City of Detroit that it would terminate his participation in my elected family coverage effective February 1, 2015.

6.    I was immediately alarmed by this notification because my spouse had undergone heart bypass surgery and is on medication for this condition.

7.    We feared what could occur if a medical emergency occurred while we were without adequate medical coverage.

SUDNICKLAW, P.C., 2555 CROOKS ROAD, SUITE 150, TROY, MI 48084 (248) 643-8533

8. We were told by the City of Detroit that we were not entitled to COBRA coverage because my husband was eligible for a $125 monthly stipend for medical care as a retiree.

9. The stipend was inadequate to address the medical needs of my spouse. We discovered that adequate medical coverage for my spouse would cost approximately $1,200.00 a month or about one-third (1/3) of his monthly pension.

10. The sudden termination of my spouse's participation in my contractual family medical plan has created considerable anxiety and unexpected financial hardship.

11. I understand that spousal coverage has been terminated only for the spouses of DPLSA members who retired from the City of Detroit. Other spouses continue to participate in either the two-person or family medical benefit provided for under the terms of the DPLSA contract. This arbitrary distinction is patently unfair and discriminates against the spouse who provided dedicated service to the City.

I declare that to the best of my knowledge and belief the information contained herein is true and correct.

_____
Nancy Headapohl

Subscribed and sworn before me
this 11th day of February, 2015.

_____
Notary Public
Wayne County, Michigan
Acting in Wayne County, Michigan
My commission expires: 12/5/2019

2